IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-689-D

| | |
|---|---|
| LISA ALISON MCDOUGAL, et al., | ) |
| Plaintiffs, | ) |
| v. | ) **ORDER** |
| WAKE COUNTY, NORTH CAROLINA, | ) |
| Defendant. | ) |

On November 30, 2023, Lisa Alison McDougal ("McDougal") and Patricia Geary Overman ("Overman) (collectively, "plaintiffs"), on behalf of themselves and other similarly situated women, filed this action against Wake County, North Carolina ("Wake County" or "defendant") [D.E. 1]. On February 5, 2024, Wake County moved to dismiss the complaint for failure to state a claim [D.E. 12]. See Fed. R. Civ. P. 12(b)(6). On February 26, 2024, plaintiffs amended their complaint and added additional factual allegations [D.E. 14]. In plaintiffs' amended complaint, they allege: (1) sex discrimination by failure to promote in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., (2) sex discrimination in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206, and (3) retaliation in violation of Title VII. See [D.E. 14] ¶¶ 108–132. On March 22, 2024, Wake County moved to dismiss the amended complaint in part [D.E. 17] and filed a memorandum in support [D.E. 18]. See Fed. R. Civ. P. 12(b)(6). On April 12, 2024, plaintiffs responded in opposition [D.E. 19]. On April 26, 2024, Wake County replied [D.E. 20]. As explained below, the court grants in part and denies in part Wake County's motion to dismiss the amended complaint [D.E. 17]. Plaintiffs' timely Title VII failure-to-promote sex discrimination claims and retaliation claims survive.

I.

In September 2002, McDougal started working for Wake County as a part-time intermediate medic at the Department of Emergency Medical Services ("Wake County EMS"). See Am. Compl. [D.E. 14] ¶¶ 1, 21. After McDougal received her state certification, Wake County promoted her to paramedic. See id. at ¶ 21. In 2008, McDougal applied for an Advanced Practice Paramedic and Field Training Officer position. See id. at ¶ 24. In January 2009, Wake County promoted her to that position. See id.

From 2011 to 2016, McDougal applied for the District Chief position three times. See id. at ¶ 27. Wake County hired a man each time. See id. In June 2016, McDougal applied again, and Wake County promoted her to the District Chief position. See id. at ¶ 28. When promoted, Wake County offered her a 2.5% raise. See id. at ¶ 33. McDougal informed her superiors that Wake County had given the men promoted to the same role a 5% raise. See id. Wake County then gave McDougal a 5% raise. See id.

In November 2021, McDougal applied for the Deputy Director position. See id. at ¶ 29. Wake County did not interview her or any women for this position. See id. at ¶ 30. In response, McDougal complained to Wake County Human Resources and Wake County's Director of Diversity. See id. Wake County reevaluated the applicants, interviewed one woman, but hired a man. See id. at ¶ 31. In April 2022, McDougal applied for the Chief Operating Officer position. See id. at ¶ 32. Wake County did not interview her or any women for this position. See id.

Overman started working for Wake County in 2006 as a medic at Wake County EMS. See id. at ¶ 2. In 2015, she earned her bachelor's degree. See id. at ¶ 36. The same year, she began applying for promotions. See id. at ¶ 39. From 2015 to present, Wake County denied Overman at least 12 promotions. See id. at ¶ 39, 47–48. In 2017, Wake County promoted Overman to Field

2

Training Officer. See id. at ¶ 38. In August 2018, Wake County invited Overman to attend the Training Chief assessment program. See id. at ¶ 42. Wake County did not, however, promote Overman to Training Chief. See id. Throughout 2019, Overman applied for EMS Supervisor, EMS Specialist Training Officer, EMS Supervisor Scheduler, and Advanced Practice Paramedic positions. See id. at ¶ 48. During that period, Wake County hired three men without college degrees as EMS Supervisors. See id. at ¶ 49. On May 21, 2021, Overman applied for the EMS Clinical Officer position, but Wake County hired a male colleague with no college degree. See id. at ¶ 51. On May 26, 2021, Overman applied for the EMS Clinical Chief Officer position, but Wake County only interviewed men. See id. at ¶ 52.

In August 2021, Overman earned a master's degree. See id. at ¶ 36. On October 20, 2021, Overman applied for the EMS Supervisor Field Operations position, but Wake County only interviewed men. See id. at ¶ 53. On November 23, 2021, Overman applied to become Deputy Director of Support Services, but Wake County hired a man. See id. at ¶ 54. On December 20, 2021, Overman sought the Advanced Practice Paramedic position, but Wake County did not hire her. See id. at ¶ 55.

Overman is only aware of one female in upper management, and Wake County promoted her in 2022. See id. at ¶¶ 40, 46. Overman asked for her promotion application scores, which are created when an applicant applies for a job, but Wake County refused to provide them. See id. at ¶ 43. Additionally, Overman received mixed feedback about promotion requirements. See id. at ¶¶ 44–45. On October 5, 2021, Overman complained to Wake County Human Resources. See id. at ¶ 56.

On October 19, 2021, Overman applied for an EMS Supervisor position, but Wake County hired three men. See id. at ¶ 57. On December 20, 2021, Overman applied for the Advanced

3

Practice Paramedic position, but Wake County hired three men without college degrees. See id. at ¶ 58.

On March 3, 2022, Overman applied for an EMS Instructor position, but Wake County did not hire her. See id. at ¶ 59. On April 4, 2022, Overman emailed Chris Colangelo, whose relationship to Wake County is not explained in the amended complaint, and complained that her salary was only $69,686 but John Barile, whose relationship to Wake County is not explained in the amended complaint, earned $95,834. See id. at ¶ 64.

On July 12, 2022, Overman applied for the EMS Supervisor in Training in Review position, but Wake County did not hire her. See id. at ¶ 60. On February 6, 2023, Overman applied for the EMS Supervisor Officer position, but Wake County hired a man. See id. at ¶ 61. On March 13, 2023, Overman applied for the EMS Instructor position, but Wake County hired a man with no college degree. See id. at ¶ 62. On May 27, 2023, Overman applied for the EMS Supervisor Training Officer position, but Wake County hired two men. See id. at ¶ 63.

Plaintiffs allege that since fall 2010, female Wake County EMS medics have been denied promotions and equal pay in favor of their less qualified male counterparts. See id. at ¶¶ 5–9. On July 5, 2022, McDougal filed a charge with the Equal Employment Opportunity Commission ("EEOC") on behalf of herself and other female medics alleging sex discrimination. See id. at ¶ 16. On August 25, 2022, Overman also filed an EEOC charge on behalf of herself and other female medics alleging sex discrimination. See id. at ¶ 17. On October 7, 2022, plaintiffs amended their EEOC charges. See id. at ¶¶ 16–17. On September 1, 2023, the EEOC issued McDougal a right-to-sue notice. See id. at ¶ 18. On November 27, 2023, the EEOC issued Overman a right-to-sue notice. See id. at ¶ 19.

II.

A.

On February 5, 2024, Wake County moved to dismiss plaintiffs' complaint for failure to state a claim. See [D.E. 12]; Fed. R. Civ. P. 12(b)(6). On February 26, 2024, plaintiffs amended their complaint and added additional factual allegations. See Am. Compl. [D.E. 14]. On March 22, 2024, Wake County filed a motion to dismiss plaintiffs' amended complaint. See [D.E. 17]. Accordingly, the court dismisses Wake County's original motion as moot and considers Wake County's motion to dismiss plaintiffs' amended complaint.

B.

Before a person may file a claim in court under Title VII, the person must file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(f)(1). An EEOC charge suffices "only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quotation omitted); see Miles v. Dell, Inc., 429 F.3d 480, 491–92 (4th Cir. 2005). Moreover, the content of the EEOC charge determines the scope of the plaintiff's right to maintain a Title VII claim in court. See, e.g., Hentosh v. Old Dominion Univ., 767 F.3d 413, 416–17 (4th Cir. 2014), abrogated on other grounds by Fort Bend Cnty. v. Davis, 587 U.S. 541 (2019); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012); Miles, 429 F.3d at 491–92; Bryant, 288 F.3d at 132–33. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one

5

basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Davis, 587 U.S. 541; Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011). The same principle applies with respect to a plaintiff who files an EEOC charge alleging one adverse employment action (such as a failure to promote), but then seeks to expand the formal litigation claim to a separate adverse employment action (such as a termination). See Bonds, 629 F.3d at 379–80; Jones, 551 F.3d at 300; Miles, 429 F.3d at 491–92; Chacko, 429 F.3d at 509; Bryant, 288 F.3d at 132–33; Evans, 80 F.3d at 963. These limiting principles provide fair notice to employers, permit the EEOC to investigate, and (if appropriate) allow for dispute resolution without litigation. See, e.g., Chacko, 429 F.3d at 508–09, 513; Miles, 429 F.3d at 491.

Under Title VII, plaintiffs had to file their EEOC charges within 180 days of each alleged adverse employment action. See, e.g., 42 U.S.C. § 2000e-5(e)(1), (f)(1); Davis, 587 U.S. 544; Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109–15 (2002); EEOC v. Com. Off. Prods. Co., 486 U.S. 107, 110 (1988); Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004); Bryant, 288 F.3d at 132; Donald v. Novant Health, Inc., 689 F. Supp. 3d 170, 176 (E.D.N.C. 2023); Coleman v. Altec, Inc., No. 5:16-CV-954, 2018 WL 4289610, at *2 (E.D.N.C. Sept. 7, 2018) (unpublished); Young v. Onslow Water & Sewer Auth., No. 7:16-CV-259, 2018 WL 405975, at *4 (E.D.N.C. Jan. 12, 2018) (unpublished); Barcliff v. N.C. League of Muns., No. 5:10-CV-244, 2011 WL 3290578, at *2 (E.D.N.C. Aug. 1, 2011) (unpublished); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539 (E.D.N.C. 2008); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 606 n.3 (E.D.N.C. 2006). If a party fails to file a timely EEOC charge, the party "lose[s] the ability to recover for" that claim because the claim is not "actionable." Morgan, 536 U.S. at 110, 113. Only adverse employment actions "that took place within the timely filing

period are actionable." Id. at 114; see Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 623–24 (2007), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; Williams, 370 F.3d at 428; Evans, 80 F.3d at 963; Coleman, 2018 WL 4289610, at *2; Young, 2018 WL 405975, at *4–5; Cooper v. Smithfield Packing Inc., No. 5:10-CV-479, 2011 WL 3207912, at *3 (E.D.N.C. July 27, 2011) (unpublished); Barcliff, 2011 WL 3290578, at *4; McDougal-Wilson, 427 F. Supp. 2d at 606 n.3. "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." Morgan, 536 U.S. at 113. Likewise, Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." Id.

As for the timeliness of the Title VII discrimination claims, on July 5, 2022, McDougal filed her EEOC charge. See Am. Compl. ¶ 16. McDougal concedes that only discrete acts of discrimination that occurred on or after January 6, 2022, are actionable under Title VII. See [D.E. 19] 9–10; Morgan, 536 U.S. at 109–15. Thus, the court dismisses any claim under Title VII concerning a discrete act of discrimination that occurred before January 6, 2022. Similarly, on August 25, 2022, Overman filed her EEOC charge. See Am. Compl. ¶ 16. Overman concedes that only discrete acts of discrimination that occurred on or after February 26, 2022, are actionable under Title VII. See [D.E. 19] 9–10; Morgan, 536 U.S. at 109–15. Thus, the court dismisses any claim under Title VII concerning a discrete act of discrimination that occurred before February 26, 2022. Wake County does not ask the court to evaluate the merits of the remaining timely Title VII sex discrimination claims. See [D.E. 17] 1. Accordingly, the court does not address those claims.

As for the timeliness of the Title VII retaliation claims, the respective January 6, 2022, and February 26, 2022, deadlines still apply. Thus, the court dismisses any retaliation claim under Title VII that occurred before January 6, 2022, for McDougal, and before February 26, 2022, for Overman.

III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Giarratano, 521 F.3d at 302 (quotation omitted); see Coleman, 626 F.3d at 189. A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials

8

"attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A plaintiff need not plead a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), to survive a motion to dismiss. See, e.g., Barbour v. Garland, 105 F.4th 579, 590 (4th Cir. 2024); Holloway v. Maryland, 32 F.4th 293, 298 (4th Cir. 2022); Bing v. Bravo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020); McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584–85 (4th Cir. 2015). Nonetheless, a plaintiff must plausibly allege a claim for relief under the governing law. See, e.g., Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63; Barbour, 105 F.4th at 590; Holloway, 32 F.4th at 298–301; Bing, 959 F.3d at 616–18; McCleary-Evans, 780 F.3d at 585–86, 588.

A.

Plaintiffs allege an EPA claim against Wake County. See Am. Compl. ¶¶ 120–24. Under the EPA:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages

9

> to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1). To demonstrate a prima facie case under the EPA, a plaintiff must show: (1) the employer paid higher wages to an employee of the sex opposite of the plaintiff; (2) the plaintiff and comparator employee performed work that required equal skill, effort, and responsibilities; and (3) the plaintiff and comparator employee performed that work under similar working conditions. See Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Polak v. Va. Dep't of Env't Quality, 57 F.4th 426, 429–30 (4th Cir. 2023); Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 653–54 (4th Cir. 2021); Evans v. Int'l Paper Co., 936 F.3d 183, 196 (4th Cir. 2019); Spencer v. Va. State Univ., 919 F.3d 199, 203 (4th Cir. 2019); EEOC v. Md. Ins. Admin., 879 F.3d 114, 120 (4th Cir. 2018); Wheatley v. Wicomico Cnty., 390 F.3d 328, 332–34 (4th Cir. 2004); Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994); Bethea v. First-Citizens Bank & Tr. Co., No. 2:22-CV-2790, 2023 WL 6639774, at *13 (D.S.C. July 26, 2023) (unpublished), report and recommendation adopted, No. 2:22-CV-2790, 2023 WL 6284425 (D.S.C. Sept. 27, 2023) (unpublished). "This initial showing permits an inference that a pay disparity was based on sex discrimination," even if plaintiff cannot demonstrate the employer acted with discriminatory intent. Spencer, 919 F.3d at 203; see Polak, 57 F.4th at 430; Md. Ins. Admin., 879 F.3d at 120. If a plaintiff demonstrates her prima facie case, the burden shifts to the employer to show that the pay differential "was based on a factor other than sex," and "that the proffered reason did in fact explain the wage disparity, not merely that it could." Spencer, 919 F.3d at 203, 206; see Md. Ins. Admin., 879 F.3d at 120.

As for McDougal, McDougal alleges that "in the two years prior to this litigation, [she] has

10

been paid less than other similarly qualified male employees in similar roles." Am. Compl. ¶ 5. This "threadbare recital[]" of the elements fails to plausibly allege an EPA claim. Iqbal, 556 U.S. at 678. Merely because "a certain action is potentially consistent with [an EPA violation] does not alone support a reasonable inference [of an EPA violation]." Kelly v. Town of Abingdon, 90 F.4th 158, 169 (4th Cir. 2024) (quotation omitted); Bing, 959 F.3d at 616–18; McCleary-Evans, 780 F.3d at 582, 585–86, 588. Accordingly, McDougal fails to state an EPA claim, and the court dismisses it without prejudice.

McDougal also alleges that in June 2016, Wake County only offered her a 2.5% raise when her male counterparts who were previously promoted to the same position received 5% raises. See id. at ¶ 33. McDougal, however, also notes that Wake County gave her a 5% raise before she began working in the same position when she informed Wake County of the alleged difference. See id.

The EPA's two-year statute of limitations bars this claim. See 29 U.S.C § 255(a); Brinkley-Obu, 36 F.3d at 345–46. Accordingly, the court dismisses McDougal's EPA claim.

As for Overman, Overman alleges that "her salary [is] less than John Barile, a male coworker with comparable experience and a comparable role." Am. Compl. ¶ 64. Barile earns $95,834, and Overman earns $69,686. See id. The amended complaint does not state what John Barile's job is, or that its performance "requires equal skill, effort, and responsibility, and ... [is] performed under similar working condition." 29 U.S.C § 206(d)(1). In alleging that a comparator performed "virtually identical" work in "skill, effort, and responsibility" as the plaintiff, "a plaintiff may not rely on broad generalizations at a high level of abstraction." Spencer, 919 F.3d at 203–04. Overman's allegations fail to plausibly allege an EPA violation. See, e.g., Kelly, 90 F.4th at 169; Bing, 959 F 3d. at 616–18; McCleary-Evans, 780 F.3d at 585–86, 588; Michael v. Va. Dep't of Transp., No. 3:21-CV-764, 2022 WL 3569004, at *10 (E.D. Va. Aug. 18, 2022) (unpublished)

11

(dismissing an EPA claim at the motion to dismiss stage for not providing "any details about her coworkers' job responsibilities and how they compared to hers."); Levere v. Signature Props., LLC, No. CV ELH-21-1929, 2022 WL 2159837, at *16–18 (D. Md. June 14, 2022) (unpublished) (dismissing an EPA claim at the motion to dismiss stage for only alleging a "Director of Operations" comparator with "minimal discussion" or the skills, effort, or responsibilities or allegations of similarities of position); cf. Reardon v. Herring, 191 F. Supp. 3d 529, 548 (E.D. Va. 2016) (holding that alleging a substantially lower salary than five male attorneys in the same department allowed an inference of requiring equal skill, effort, and responsibility at the motion to dismiss stage). Even viewing the amended complaint in the light most favorable to Overman, she fails to plausibly allege an EPA claim. Accordingly, the court dismisses Overman's EPA claim.

B.

Plaintiffs also allege a Title VII retaliation claim against Wake County. See Am. Compl. ¶¶ 125–32. To state a retaliation claim, plaintiffs must plausibly allege that (1) they engaged in protected activity under Title VII, (2) their employer took some action against them that a reasonable employee would find materially adverse, and (3) their employer took the adverse action because of the protected activity. See, e.g., Muldrow v. City of St. Louis, 144 S. Ct. 967, 976 (2024); Barbour, 105 F.4th at 589–90; Massaro v. Fairfax Cnty., 95 F.4th 895, 901–02 (4th Cir. 2024); Cosby v. S.C. Prob., Parole & Pardon Servs., 93 F.4th 707, 718 (4th Cir. 2024); McIver v. Bridgestone Ams., Inc., 42 F.4th 398, 411 (4th Cir. 2022); Walton v. Harker, 33 F.4th 165, 177 (4th Cir. 2022); Holloway, 32 F.4th at 299–300; Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021); Sempowich, 19 F.4th at 653; Kitlinski v. U.S. Dep't of Justice, 994 F.3d 224, 232 (4th Cir. 2021); Wilcox v. Lyons, 970 F.3d 452, 460 (4th Cir. 2020); Int'l Paper Co., 936 F.3d at 195; Perkins v. Int'l Paper Co., 936 F.3d 196, 213 (4th Cir. 2019); Savage v. Maryland, 896 F.3d

12

260, 276 (4th Cir. 2018); Strothers v. City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018); Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 217 (4th Cir. 2016); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 253 (4th Cir. 2015); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–70 (2006); Bonds, 629 F.3d at 384 (4th Cir. 2011).

Title VII protects two kinds of activities: opposition and participation. See Netter v. Barnes, 908 F.3d 932, 937–38 (4th Cir. 2018); Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "[O]ppositional activity must be directed to an unlawful employment practice under Title VII . . . ." DeMasters, 796 F.3d at 417 (quotation omitted); see Netter, 908 F.3d at 937–38; Boyer-Liberto, 786 F.3d at 282; Laughlin, 149 F.3d at 259. The opposition clause applies when an employee "opposes not only employment actions actually unlawful under Title VII but also employment actions she reasonably believes to be unlawful [under Title VII]." DeMasters, 796 F.3d at 417 (cleaned up); see Netter, 908 F.3d at 937–38; Boyer-Liberto, 786 F.3d at 282. The participation clause protects employees making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C. § 2000e-3(a); Laughlin, 149 F.3d at 259.

Under Title VII, material adversity "means [that an employer's actions] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68 (quotation omitted). Title VII does not redress "trivial harms" or provide a "general civility code for the American workplace." Id. (quotation omitted); see Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Rather, Title VII's anti-retaliation provision prohibits an employer's actions that "are likely to deter victims of discrimination from complaining

13

to the EEOC, the courts, and their employers." White, 548 U.S. at 68 (quotation omitted); see Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997). The court analyzes material adversity from the perspective of an objective, reasonable employee and ignores "a plaintiff's unusual subjective feelings." White, 548 U.S. at 68–69; see also Bryant, 288 F.3d at 134–35. Additionally, the court must account for the "particular circumstances" surrounding the alleged retaliation. White, 548 U.S. at 69.

Title VII requires a plaintiff to prove that "the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Tex. Sw. Med. Center v. Nassar, 570 U.S. 338, 352 (2013); see Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 900 (4th Cir. 2017); Guessous, 828 F.3d at 216–17; Huckelba v. Deering, No. 5:16-CV-247, 2016 WL 6082032, at *3 (E.D.N.C. Oct. 17, 2016) (unpublished). "This but-for causation requirement is stricter than the lessened causation standard for discrimination claims, under which a plaintiff need only show that race, color, religion, sex, or national origin was a motivating factor for an adverse action by an employer." Netter, 908 F.3d at 938 (quotations omitted); see Foster, 787 F.3d at 249. This causation standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Nassar, 570 U.S. at 360; see Guessous, 828 F.3d at 217. As such, "[n]aked allegations of a causal connection between plaintiff's protected activity and the alleged retaliation do not state a plausible Title VII claim." Huckelba, 2016 WL 6082032, at *3; see McCleary-Evans, 780 F.3d at 585–86, 588.

"To establish a causal relationship between the protected activity and the termination, a plaintiff must show that the decision maker was aware of the protected activity at the time the alleged retaliation occurred." Roberts, 998 F.3d at 124. An employee cannot plausibly allege a but-for causal connection between protected activity and the employer's adverse action without

14

alleging that the decisionmaker who took the adverse action knew that the employee had engaged in protected activity. See Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998), abrogated on other grounds by White, 548 U.S. 53; see also Conrad v. CSX Transp., Inc., 824 F.3d 103, 108 (4th Cir. 2016); Gestamp S.C., L.L.C. v. NLRB, 769 F.3d 254, 261–62 (4th Cir. 2014).

Courts consider temporal proximity between an employer's knowledge of protected activity and an adverse employment action. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam); Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004), abrogated on other grounds by Nassar, 570 U.S. 338. An adverse action taken shortly after a decisionmaker learned of protected activity typically permits a reasonable inference of causation. See Dowe, 145 F.3d at 657. "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, [however,] . . . negates any inference that a causal connection exists between the two." Id. (finding three years too long to infer causation); see Breeden, 532 U.S. at 274 (same for 20 months); Massaro, 95 F.4th at 902 (same for 18 months); Roberts, 998 F.3d at 126 (same for three months); Penley v. McDowell Cnty. Bd. of Ed., 876 F.3d 646, 656 (4th Cir. 2017) (same for eight to nine months); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (same for 13 months). A plaintiff can rebut this conclusion by plausibly alleging that her employer's actions taken during the intervening period demonstrate retaliatory animus. See Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007); King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003).

The court also assumes without deciding that McDougal engaged in protected activity under Title VII in November 2021 when she complained to employee relations in human resources

15

and to Wake County's Director of Diversity. See Am. Compl. ¶ 30. McDougal again engaged in protected activity on July 5, 2022, when she filed her EEOC charge. See id. at ¶ 16. McDougal's Title VII retaliation claim concerning her April 2022 non-promotion to Chief Operating Officer ekes across the plausibility line. See, e.g., Holloway, 32 F.4th at 299–300.

The court assumes without deciding that Overman engaged in protected activity under Title VII on April 4, 2022, when she complained to Wake County about a salary differential. See id. at ¶ 64. Overman again engaged in protected activity on August 25, 2022, when she filed her EEOC charge. See id. at ¶ 17. Overman's Title VII retaliation claim concerning (1) her July 12, 2022 non-promotion to EMS Supervisor in Training in Review; (2) her February 6, 2023 non-promotion to EMS Supervisor Officer; (3) her March 13, 2023 non-promotion to EMS Instructor; and (4) her May 27, 2023 non-promotion to EMS Supervisor Training Officer ekes across the plausibility line. See, e.g., Holloway, 32 F.4th at 299–300.

IV.

In sum, the court DISMISSES AS MOOT defendant's motion to dismiss plaintiff's complaint [D.E. 12] and GRANTS IN PART and DENIES IN PART defendant's motion to dismiss plaintiff's amended complaint [D.E. 17]. The only claims that remain are plaintiffs' timely Title VII failure-to-promote sex discrimination claims and their timely Title VII retaliation claims. The court DISMISSES WITHOUT PREJUDICE all other claims.

SO ORDERED. This 5 day of September, 2024.

JAMES C. DEVER III
United States District Judge